IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


UNITED STATES OF AMERICA          )
                                  )
        v.                        )          No.  3:04-cr-32
                                  )          (Phillips/Shirley)
PERRY DAWHAYNE McCREARY-          )
REDD                              )
                                  )


## MEMORANDUM AND ORDER


This criminal case is presently before the court on the following:

(1)     Defendant's objection [Doc. 107] to the Report
        and Recommendation (R&R) [Doc. 98] filed by
        the Honorable C. Clifford Shirley, Jr., United
        States Magistrate Judge, on October 10, 2007;

(2)     Government's objection [Doc. 108] to that R&R;

(3)     Defendant's motion to suppress statements
        [Doc. 99];

(4)     Defendant's motion to dismiss the indictment on
        Double Jeopardy grounds [Doc. 101];

(5)     Defendant's motion to adopt a prior suppression motion [Doc. 103];

(6)     Defendant's motion to dismiss for prosecutorial vindictiveness [Doc. 104];  and

(7)     Defendant's motion to exclude a statement [Doc. 105].

The issues raised have been fully briefed by the parties [*see* Docs. 100, 106, 109, 110, 111, 112, and 113].[1]  Thus, all of these matters are ripe for adjudication.  For the reasons that follow, the court will take the following actions:  (1) defendant's objection to the R&R will be overruled and the government's objection will be sustained whereby the R&R will be accepted in part and rejected in part so that defendant's underlying motion to declare the plea agreement void [Doc. 83] will be denied and the government's underlying motion to reinstate count one of the indictment [Doc. 95] will be granted;  and (2) all other defense motions will be denied.[2]

_____

[1]In addition to these filings, some of the parties' legal analyses are set forth in the underlying motions and, of course, in the objections themselves.  Moreover, with respect to the pending objections to the R&R, the court heard oral argument on November 9, 2007 [*see* Doc. 114].

[2]As the parties are aware, all pretrial motions in criminal cases are referred to a magistrate judge pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation as appropriate.  However, under the unusual circumstances of this case, it would be a waste of valuable judicial resources to refer defendant's pending motions to Judge Shirley.  As will become apparent, the issues involving the objections to the R&R are inextricably intertwined for the most part with the issues set forth in the remaining defense motions because virtually all issues relate to this court's interpretation of the mandate issued by the United States Court of Appeals for the Sixth Circuit in this case, *United States v. McCreary-Redd*, 475 F.3d 718 (6th Cir. 2007), and the ramifications of that decision on

# I.

## *Background Information*

In order to understand the present posture of this case, a somewhat detailed recapitulation of the background of this case is necessary.  On February 18, 2004, a grand jury for this district filed a three-count indictment charging defendant with:  (1) being an ex-felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1);  (2) knowingly, intentionally and without authority possessing with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and (3) knowingly using and carrying a firearm during and in relation to a drug trafficking crime, namely possession with the intent to distribute crack cocaine, as charged in count two, in violation of 18 U.S.C. § 924(c)(1) [*see* Doc. 1].

On December 7, 2004, the defendant pled guilty to counts two and three of the indictment pursuant to a written "Plea Agreement" [Doc. 46] and an "Agreed Rule 11 Factual Basis" [Doc. 47].  Of particular significance, the Plea Agreement provided that count one would be dismissed at sentencing [*see* Doc. 46, p.1, ¶ 1]. Pursuant to the Agreed Rule 11 Factual Basis and as noted by the Sixth Circuit, the following underlying facts were stipulated by the parties:

---

all other aspects of this case.  Eventually, the undersigned would be the final arbiter of all of these issues at the trial level and therefore will, for the sake of judicial economy, adjudicate these issues in the first instance.

On February 4,[3]2004, officers from the Knoxville Police Department ("KPD") were conducting surveillance on Parking Lot F in the Walter P. Taylor Housing Project in Knoxville, Tennessee, in response to citizens' complaints of illegal drug activity. The officers, while surveilling the area, observed a dark colored vehicle being driven with the headlights off. The officers witnessed McCreary-Redd, the driver of the vehicle, leave the vehicle and enter a building.

As McCreary-Redd returned to the vehicle, he was approached by three KPD officers. Police Officer Doyle Lee ("Lee") greeted McCreary-Redd and asked if he could speak with him. McCreary-Redd agreed. Lee then informed McCreary-Redd of the headlight violation and asked to see his identification. McCreary-Redd handed Lee his driver's license. Lee asked McCreary-Redd if he had any weapons or drugs on him, to which McCreary-Redd stated that he did not. Lee then asked McCreary-Redd if he could search him. In response to this request, McCreary-Redd placed his hands in the air and turned around.

As Lee frisked McCreary-Redd, Lee felt a hard object in McCreary-Redd's waistband which he immediately recognized to be a handgun. Lee then yelled "gun" and pushed McCreary-Redd forward onto his car. Thereafter, Lee removed the firearm, a loaded Smith & Wesson 10 mm semiautomatic pistol, from McCreary-Redd's waistband and placed him under arrest. Incident to the arrest, officers recovered a vial attached to McCreary-Redd's key chain that contained approximately three grams of crack cocaine, individually wrapped and packaged.

*United States v. McCreary-Redd*, 475 F.3d 718, 720 (6th Cir. 2007).

---

[3]This is apparently a typographical error which was set forth on the Agreed Rule 11 Factual Basis [*see* Doc. 47, p.1] and was understandably parroted by the Sixth Circuit in its opinion; however, the date of February 14th is set forth in both the original indictment [Doc. 1, p.1] and in the superseding indictment [*see* Doc. 91, pp.2-3].

4

The Plea Agreement contains many fairly standard provisions, the following of which are pertinent to the issues raised by defendant in his pending motions. First, this document is a "cooperation" Plea Agreement, stating as follows:

> 7. The Defendant further agrees to cooperate fully, truthfully, and completely with any law enforcement agents, including but not limited to personnel of the United States Attorney's office. This cooperation includes but is not limited to meeting with such law enforcement agents or United States Attorney's personnel whenever requested. The Defendant further agrees not to protect anyone who was truly involved and not to falsely implicate anyone who was not truly involved. The Defendant further agrees to testify fully, truthfully, and completely before a federal grand jury, at any trial, or any other time or proceeding if called upon by the United States to do so. The Defendant also knowingly, voluntarily and intentionally waives his right (where applicable) to have an attorney present during the course of his cooperation including questioning.

[Doc. 46, pp.3-4]. In conjunction with the cooperational aspect of the Plea Agreement, paragraph 12 provides as follows:

> 12. The United States further agrees that any self-incriminating information provided by the Defendant pursuant to his cooperation under this written plea agreement will not be used against the Defendant. The Defendant, however, recognizes that nothing in this plea agreement shall be applied to restrict the use of information (1) known to the government prior to entering into this plea agreement; (2) obtained from any other source; (3) in any prosecution for perjury or giving of false statements; (4) *in the event that the Defendant withdraws from the plea agreement*; (5) *if there is a breach of the plea agreement by the Defendant*; (6) if the Defendant violates any of the

terms or conditions of the Court's order setting conditions of release (if applicable); or (7) concerning the Defendant's prior record.

[*Id.* at pp.4-5 (emphasis added)].  Additionally, paragraph 14 of the Plea Agreement

discusses certain appeal rights waived by the defendant:

14.      The Defendant further agrees not to file a direct appeal of his convictions or any motions or pleadings pursuant to 28 U.S.C. § 2255.  However, he reserves the right to pursue a direct appeal of his sentence.  Thus, the Defendant knowingly, intentionally, and voluntarily waives his right to collaterally attack the plea or sentence in the instant case.  The Defendant understands that if the Defendant files any such motion, he will have breached the plea agreement and the United States will then have the following options:  (1) move to dismiss the motion, (2) be relieved of any obligations under the plea agreement or (3) both.  The parties agree that the Defendant retains his right to raise claims of ineffective assistance of counsel or prosecutorial misconduct.

[*Id.*, p.5].  Finally, this document sets forth the usual provision regarding the

defendant's failure to comply with the Plea Agreement:

17.      If the Defendant fails in any way to fulfill each one of his obligations under this plea agreement, the United States may elect to be released from any or all of its commitments under this plea agreement.  The United States may then prosecute the Defendant for any and all federal crimes that he has committed related to this case, including any charges dismissed pursuant to this plea agreement.  The Defendant expressly waives any statute of limitations defense and any constitutional or statutory speedy trial defense in such a prosecution.  *In addition, the*

> *Defendant agrees that, in such a prosecution, all admissions and other information that he has provided at any time, including all statements he has made and all evidence he has produced during proffers, interviews, testimony, and otherwise may be used against him, regardless of any constitutional provision, statute, rule, or agreement to the contrary.* Finally, the Defendant understands that his violation of the terms of this plea agreement would not entitle him to withdraw his guilty plea in this case.

[*Id.* at pp.6-7] (emphasis added).

It must also be noted at this juncture that the defendant had, in a pretrial suppression motion, raised an extremely interesting and novel issue as to whether the act of raising his hands and turning around under the circumstances could be equated with consent to search his person [*see* Doc. 17]. Although Judge Shirley agreed with defendant and recommended the suppression motion be granted [*see* Doc. 23], the district court[4] disagreed, affirming in part and denying in part that motion, thereby allowing the seized items (a firearm and drugs) to be entered as evidence but suppressing any statements the defendant made after he was placed in custody for violation of his *Miranda* rights. [*See* Doc. 42, pp.14-15]. Nevertheless, the Plea Agreement ultimately reached by the parties was not a conditional one

---

[4]This case was originally assigned to the Honorable James H. Jarvis, II; however, Judge Jarvis passed away on June 6, 2007. The case was randomly reassigned to the undersigned on July 30, 2007, when the mandate issued.

pursuant to Fed. R. Crim. P. 11(a)(2);[5] rather, as noted above, the Plea Agreement does not preserve this issue but instead allows the defendant only "the right to pursue a direct appeal of his sentence." [*See* Doc. 46, p.5, ¶ 14].

Pursuant to that cooperation Plea Agreement, on December 16, 2004, in the presence of his then attorney of record, Kim A. Tollison, Assistant Federal Community Defender, the defendant was interviewed by FBI Special Agent Dave Bukowski and KPD Investigator Ed Kingsbury [*see* Doc. 109, p.2]. There was no Assistant United States Attorney present for that interview [*see id.*]. It is undisputed that defendant hoped to obtain a sentencing "break" through his cooperation with law enforcement at that time.

The defendant's sentencing hearing was conducted on February 23, 2005 [*see* Doc. 53]. Even though the defendant had escaped from a halfway house while on pretrial release and fled to Michigan, the government took the position at

---

[5]That rule provides as follows:

(a) **Entering a Plea**.

. . .

(2) **Conditional Plea**. With the consent of the court and the government, a defendant may enter a conditional plea of guilty ... reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea.

sentencing that the defendant had "accepted responsibility for his actions and had made efforts to cooperate with the United States" and therefore the government did "not object to defendant receiving a two point reduction for acceptance of responsibility." [*See* Doc. 51, p.4]. Consequently, the district court sentenced the defendant to 123 months of incarceration [*see* Docs. 53-54].[6]

On March 4, 2005, AFCD Tollison filed a timely notice of appeal from that judgment [*see* Doc. 55].[7] On October 19, 2005, AFCD Tollison filed his final brief with the Sixth Circuit Court of Appeals appealing only the sentence imposed by the district court and not the underlying conviction as specifically allowed by the Plea Agreement. On May 15, 2006, however, the Sixth Circuit granted defendant's motion to dismiss AFCD Tollison, allowing the defendant to proceed *pro se*. *McCreary-Redd*, 475 F.3d at 720-21. On that same date, the defendant also filed a *pro se* supplemental brief attacking the guilty plea itself, asserting that the district court did not properly determine a factual basis for the plea in accordance with Fed. R. Crim. P. 11 [*see* Doc. 88-3].

---

[6]More specifically, the defendant received 63 months as to count two and 60 months as to count three to be served consecutively [*see id.*].

[7]The record also reflects that the defendant, proceeding *pro se*, filed a notice of appeal on March 4, 2005 [*see* Doc. 56] and again on March 8, 2005 [*see* Doc. 57]. Because a timely notice of appeal had been filed by AFCD Tollison, the Sixth Circuit dismissed the two *pro se* notices of appeal [*see* Doc. 70].

## II.

### *The Sixth Circuit's Mandate and Subsequent Proceedings*

On February 6, 2007, the Sixth Circuit filed its opinion agreeing with the defendant, concluding as follows:

> For the reasons stated above, we **VACATE** the guilty plea on counts two and three and **REMAND** for pleading anew on the grounds that the district court failed to determine that McCreary-Redd understood the nature of the charges against him.

*McCreary-Redd*, 475 F.3d at 727. The mandate from the Sixth Circuit was subsequently filed on July 30, 2007 [*see* Doc. 79].

On August 9, 2007, the defendant made his initial appearance before Judge Shirley [*see* Doc. 80]. The defendant did not, however, at that time plead anew. Neither did the defendant enter a not guilty plea to the indictment, nor did he file notice of his intent to plead guilty.[8] Consequently, a trial date was set for October 18, 2007, and a motion schedule was established [*see id.*]. On September 10, 2007, a status conference was held before Judge Shirley, during which the defendant requested and was granted leave to file motions [*see* Doc. 85]. Notably, the

---

[8]Obviously, the defendant could not enter a guilty plea before a magistrate judge. *See generally* 28 U.S.C. § 636.

defendant did not, at that time, plead anew. Thus, the defendant neither entered a plea of not guilty to the indictment nor did he file any notice of his intent to plead guilty.

Also, near the time of that status conference, the defendant filed a motion to declare the Plea Agreement void [*see* Doc. 83]. The government timely responded to that motion, arguing that the defendant's motion exceeded the scope of the Sixth Circuit's mandate [*see* Doc. 93]. That motion and the government's response frame the primary issue analyzed in the R&R at issue.

On September 12, 2007, the government filed its Notice of Defendant's Breach of Plea Agreement, maintaining that the filing of the supplemental *pro se* brief by the defendant at the Sixth Circuit was a direct appeal attacking the plea and therefore constituted a breach of the Plea Agreement [*see* Doc. 88]. That notice further announced the government's intention "to be released from any or all obligations under the plea agreement in the instant case" pursuant to the election of remedies set forth in paragraph 17 of the Plea Agreement [*see id.*, p.2].

Consistent with its Notice of Defendant's Breach of Plea Agreement, the government then sought and obtained a superseding indictment against the defendant which was filed on September 19, 2007 [*see* Doc. 91]. In that indictment,

the defendant was charged with: (1) conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A); (2) brandishing a firearm during and in relation to a drug trafficking crime, namely conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base as charged in count one, in violation of 18 U.S.C. § 924(c); (3) being an ex-felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); (4) knowingly, intentionally, and without authority possessing with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (5) knowingly using and carrying a firearm during and in relation to a drug trafficking crime, namely possession with the intent to distribute crack cocaine as charged in count four, in violation of 18 U.S.C. § 924(c)(1); and (6) criminal contempt, in violation of 18 U.S.C. § 401(3) [*see id.*]. Additionally, on September 25, 2007, the government filed a motion to reinstate count one of the original indictment in accordance with 18 U.S.C. § 3296(4)[9] [*see* Doc. 95]. This motion by the government is the only other

---

[9]That statute provides in pertinent part as follows:

> (a) **In general.** – Notwithstanding any other provision of this chapter, any counts of an indictment ... that are dismissed pursuant to a plea agreement shall be reinstated by the District Court if –
>> (1) the counts sought to be reinstated were originally filed within the applicable limitations period;
>> (2) the counts were dismissed pursuant to a plea agreement approved by the District Court under which the defendant pled guilty to other charges;
>> (3) the guilty plea was subsequently vacated on the motion of the defendant; and

motion addressed by the R&R.[10]

On September 27, 2007, Judge Shirley heard arguments on the two pending motions [*see* Doc. 96]. At the conclusion of that hearing, the defendant finally pled anew, entering pleas of not guilty to both the original and the superseding indictments [*see id.*].

## III.

### *The Recommendation and the Parties' Objections*

In his R&R, Judge Shirley recommended that defendant's motion to declare the plea agreement void [Doc. 83] be granted, finding that "the plea agreement was effectively nullified by the Sixth Circuit and neither party is bound by the promises or obligations contained in the plea agreement." [Doc. 98, p.3].[11] In

_____

> (4) *the United States moved to reinstate the dismissed counts within 60 days of the date on which the order vacating the plea becomes final.*

18 U.S.C. § 3296 (emphasis added).

[10]Judge Shirley recommended that motion be granted [*see* Doc. 98, p.4]. Not surprisingly, defendant has filed no timely objection to that portion of the R&R. Thus, that portion of the R&R will be accepted.

[11]Judge Shirley also recommended that defendant's motion be denied to the extent that the defendant intended his motion to preclude the introduction of certain evidence at trial, instructing the defendant to file a specific motion on that issue [*see* Doc. 98, p.3]. In response to Judge Shirley's pronouncement, the defendant has now filed two motions

its objection, the government contends that Judge Shirley erred in finding that the Plea Agreement itself was "effectively nullified" by the Sixth Circuit and that this "finding exceeds the scope of the Sixth Circuit's limited mandate ... ." [Doc. 108, p.3].

On remand, a district court "is constrained by the scope of the mandate under which it is operating." *United States v. Haynes*, 468 F.3d 422, 425 (6th Cir. 2006) (citation omitted). To the extent that the mandate requires interpretation beyond its clear directive, district courts must "implement both the letter and the spirit of the mandate" and take into account "the circumstances it embraces." *United States v. Moore*, 131 F.3d 595, 599 (6th Cir. 1997) (citing *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994)). As further observed by the Sixth Circuit in *United States v. Campbell*, 168 F.3d 263 (6th Cir. 1999):

> The first question the district court faces when confronted with a remanded case is that of determining what part of this court's mandate is intended to define the scope of any subsequent proceedings. The relevant language could appear anywhere in an opinion or order, including a designated paragraph or section, or certain key identifiable language. It is important to note, however, that individual paragraphs and sentences must not be read out of context.

*Id.* at 266-67.

---

seeking the suppression of certain statements [*see* Docs. 99 and 105], both of which will be addressed later in this opinion. That recommendation by Judge Shirley is thus moot.

Guided by these pronouncements, this court must therefore ascertain not only the scope of the mandate by the Sixth Circuit but also the scope of any further proceedings. In other words, while this case has been specifically remanded "for pleading anew" by the defendant, the court must also confront directly the question of whether the Sixth Circuit's opinion itself nullified the Plea Agreement or whether some act by the government or by the defendant did so. That determination is critical in shaping the precise contours of all subsequent proceedings and adjudications. On the one hand, the defendant contends that Judge Shirley was correct in his determination that the Sixth Circuit's opinion itself nullified that Plea Agreement; alternatively, the defendant contends that the government has nullified the Plea Agreement by its failure to honor certain provisions of that binding contract. On the other hand, the government contends that the defendant has nullified that Plea Agreement by certain acts he has undertaken. While both parties agree that, at this point in time, the Plea Agreement has been nullified, they have completely divergent views as to the triggering event of that nullification.

In order to resolve this dispute, a careful examination of both the Sixth Circuit's opinion in this case and other Sixth Circuit authority is in order. The Sixth Circuit's opinion indicated in the opening paragraph as follows: "For the following reasons, we **VACATE** and **REMAND** McCreary-Redd's plea pursuant to Rule 11." *McCreary-Redd*, 475 F.3d at 719. That preparatory language is completely

consistent with the Sixth Circuit's conclusion which again states, "[f]or the reasons stated above, we **VACATE** the guilty plea on counts two and three and **REMAND** for pleading anew on the grounds that the district court failed to determine that McCreary-Redd understood the nature of the charges against him." *Id.* at 727. Thus, there is no language in the introduction or in the conclusion which vacates the Plea Agreement itself;  instead, that language vacates only the guilty plea.

It is also significant that the Sixth Circuit's opinion itself speaks specifically to ambiguities in the "Agreed Rule 11 Factual Basis" and deficiencies in the Rule 11 plea colloquy.  Equally significant is the fact that the Sixth Circuit's opinion does not discuss in any manner the Plea Agreement document executed by the parties.  The opinion is totally silent on this issue.  In fact, the only mention of the Plea Agreement other than in the "Background" section, *see id.* at 719, is in a subheading of the opinion.  *See id.* at 726.  Notably, the term "plea agreement" is not capitalized in that subheading, in stark contrast to the opinion's reference, on two occasions, to the "Agreed Rule 11 Factual Basis."  *See id.* at 720 and 723.  It must also be underscored that the Sixth Circuit, when referring to the facts in support of the guilty plea set forth in the plea colloquy, refers to the "factual basis" as opposed to the document itself.  *Id.* at 723.  Consequently, the court agrees with the government that the "plea agreement" referred to in that subheading is the

agreement to plead guilty and not the Plea Agreement document executed by the parties and filed with this court.

Moreover, a fair reading of the language following that subheading with the "plea agreement" language supports that conclusion. Immediately after the subheading entitled "Upholding the plea agreement would seriously affect the fairness, integrity or public reputation of judicial proceedings[,]" the Sixth Circuit states:

> To uphold a conviction that does not prove McCreary-Redd's intent to distribute crack cocaine would be inconsistent with the purposes of Rule 11. Adhering to Rule 11 helps to ensure that a defendant's guilty plea is truly voluntary, a constitutional requirement .... Additionally, compliance with Rule 11 creates a complete record containing the relevant factors in determining if the plea was indeed voluntary. ...

> If we were to turn a blind eye to a defective guilty plea (where the district court failed to determine a factual basis, and the defendant lacked the requisite knowledge and understanding of the elements of the charge against him), such precedent would have an adverse impact which would seriously affect the fairness and integrity of the judicial proceeding. Furthermore, to uphold a conviction that does not prove McCreary-Redd's intent to distribute crack cocaine would negatively impact the reputation of judicial proceedings. After all, there is a clear distinction between pleading guilty to knowingly and intentionally possessing crack cocaine and pleading guilty to knowingly and intentionally possessing crack cocaine *with the intent to distribute*. For the reasons stated, the record in this case does not support the latter. As such, because we find

> that the district court's "error involves the defendant's state
> of mind, ... the appropriate remedy is to vacate the plea
> and remand so that the defendant can plead anew."
> [*United States v.*] *Tunning*, 69 F.3d [107,] 115 [(6th Cir.
> 1995)].

*Id.* at 726 (some citations omitted) (emphasis in original).  As a careful examination

of the opinion suggests, the Sixth Circuit is concerned about the effect of upholding

the conviction – not the Plea Agreement  –  when Rule 11 is not properly followed

by the district court.  Accordingly, this court cannot embrace the notion that the Sixth

Circuit's opinion "effectively nullified" the Plea Agreement entered into by these

parties.


        Furthermore, to determine precisely what is required of this court

pursuant to this mandate from the Sixth Circuit, *i.e.*, requiring the defendant to "plead

anew," it is instructive to examine the *Tunning* case relied on by the Sixth Circuit as

it clearly discusses what procedure is not to be undertaken by this court:

> Tunning argues that the appropriate remedy in this case
> would be to vacate his guilty plea and allow him to plead
> anew.  We disagree.  In [*United States v.*] *Goldberg*, 862
> F.2d [101,] 106 [(6th Cir. 1988)], we adopted the Third
> Circuit's "two remedy" rule for disposing of appeals in
> which the court finds error in the taking of the guilty plea:
> In cases where the error involves a problem with the district
> court's state of mind, for example where, as here, the
> record does not include sufficient information from which
> the district court could find a factual basis for the guilty
> plea, the appropriate remedy is to remand to the district

court for further proceedings to create the appropriate record. In a case where the error involves the defendant's state of mind, such as when the district court failed to determine that the defendant was competent and voluntarily entering a guilty plea, the appropriate remedy is to vacate the plea and remand so that the defendant can plead anew. This case is one of the former. Rule 11(f) establishes a requirement for the district court, that is, it must satisfy itself that a sufficient factual basis exists. Where, as in this case, we conclude that the record is not one upon which the district court could have satisfied itself, then the appropriate remedy is to remand the case with instructions to further develop the record. If the government is unable to establish a factual basis for all the elements necessary to prove credit card fraud under § 1029(a)(2) through its proffer of evidence, then the factual basis must be established in some other way, or the district court may not accept Tunning's guilty plea.

*Tunning*, 69 F.3d at 115. As is reinforced by the *Tunning* case, because the instant case is one which involves the defendant's state of mind – as opposed to the district court's state of mind – this case was remanded for the sole purpose of allowing the defendant to "plead anew." It was not remanded for further proceedings to allow the government to create, or attempt to create, an appropriate record to support the guilty plea. In fact, because of the limited scope of the Sixth Circuit's remand, such a procedure would be prohibited by this particular remand.[12]

_____

[12]It could certainly be argued in this case, however, that the Sixth Circuit identified two problems with this guilty plea – one with the defendant's state of mind and one with the district court's state of mind, *i.e.*, "where the district court failed to determine a factual basis, *and* the defendant lacked the requisite knowledge and understanding of the elements of the charge against him ... ." *McCreary-Redd*, 475 F.3d at 726 (emphasis added). According to *Tunning*, each of those deficiencies has a separate remedy. In remanding this case, the Sixth Circuit could have instructed this court both to create the

Having now determined that the Sixth Circuit's opinion did not effectively nullify the Plea Agreement between these parties in remanding this case for the defendant to plead anew, the next question is whether the defendant has breached the still existing Plea Agreement before or after the mandate. There is ample proof in this record that he has indeed done so on two occasions.

First, the court is in complete agreement with the government that the filing of defendant's *pro se* supplemental brief with the Sixth Circuit on May 15, 2006 [*see* Doc. 88-3] violated paragraph 14 of the Plea Agreement. There, the defendant agreed "not to file a direct appeal of his convictions ... ." [Doc. 46, p.5, ¶14]. The court has reviewed the defendant's brief and can interpret it as nothing other than a direct attack of his guilty plea on counts two and three of the original indictment. In fact, the reason he prevailed on his *pro se* direct appeal was because he convinced the Sixth Circuit that, "in light of the small quantity of drugs, this stipulation [for approximately 3.0 grams that were individually wrapped and packaged for resale], without more, is ambiguous and does not sufficiently establish that McCreary-Redd intended to distribute the substance." *Id.* at 724. Furthermore, as observed by the Sixth Circuit, "based upon the facts that McCreary-Redd entered a building in a neighborhood with illegal drug activity and was apprehended upon

_____

appropriate record and to allow the defendant to plead anew. Nevertheless, this case was remanded for the sole purpose of allowing the defendant to "plead ... anew." *Id.* at 727.

exiting, one could equally conclude that McCreary-Redd had just purchased the substance, which would have been individually wrapped and packaged for resale, for personal use.  This being a possibility, the stipulation, as it stands, would require an impermissible inference of McCreary-Redd's intent to distribute."  *Id.* (footnotes omitted).

In view of defendant's position in his filing and in view of these pronouncements by the Sixth Circuit, the only logical remedy was to remand this case back so that the defendant could enter a not guilty plea to the indictment. Obviously, there is no other direction this case could take.  Again, this case was not remanded for the government to further develop this record so that the defendant's guilty plea could be supported by additional evidence.  And, most certainly, it defies logic to believe that the defendant vigorously attacked his guilty plea in his appeal only to come back to plead guilty to these same charges based on this record. Defendant is convinced that he is not guilty of the charges, he convinced the Sixth Circuit that the record did not support it, and he will now be given a chance to require the government to convince a jury of these and other charges.

Second, even assuming, *arguendo*, that the defendant's filing of the *pro se* supplemental brief with the Sixth Circuit did not breach the Plea Agreement, the law in the Sixth Circuit is well established that the defendant's act of withdrawing his

guilty plea by entering a not guilty plea to the original indictment and the superseding indictment did "effectively nullify" the Plea Agreement, thereby entitling the government to employ all of the remedies set forth in that contract. Most recently, in *United States v. Jones*, 469 F.3d 563 (6th Cir. 2006), the Sixth Circuit, in affirming this court,[13] observed as follows:

> When Jones withdrew his guilty plea, the plea agreement was nullified – at least in the sense of the government's commitment to drop certain charges – just like the plea agreement in *Bradley*. Since the agreement was no longer valid, the government was no longer bound by its promises therein and was then free to indict Jones based on any legally obtained evidence. The District Court correctly found that there was no bar to reinstated charges from the original indictment that were dismissed at the time the plea agreement was formed.

*Id.* at 566.

Other Sixth Circuit case law is in accord. For example, in *United States v. Lowery*, 60 F.3d 1199 (6th Cir. 1995), defendant Pelfrey pled guilty to a bank robbery and firearms charges (counts two and three) pursuant to a plea agreement which provided for the dismissal of the offense of conspiracy to commit bank robbery (count one). *Id.* at 1202-03. On appeal, the defendant argued that he was not properly informed of the nature of the charges to which he pled guilty as required by

---

[13]The Honorable Thomas A. Varlan presided over the trial of the *Jones* case.

Rule 11(c)(1) of the Federal Rules of Criminal Procedure.  *Id.* at 1202.  The Sixth Circuit agreed, concluding that the defendant was not adequately advised of the nature of the charges during the plea colloquy and vacated his conviction and remanded for further proceedings.  *Id.* at 1205.  In doing so, the Sixth Circuit made the following observation:

> Finally, we vacate the judgment of conviction only on count 3.  The government gratuitously advises that logic compels us to vacate the judgment of conviction on count 2 as well, because that count also charged an aiding and abetting offense.  However, the defendant does not request such relief.  We do recognize, however, that dismissal of count 1 constituted the consideration of the negotiated plea agreement.  *Upon remand for repleading on count 3, if the defendant declines to plead guilty to count 3, or the district court refuses to accept a plea to count 3, then the defendant may be recharged with count 1 as well as count 3.*

*Id.* (emphasis added).   Thus, *Lowery* offers considerable support for the government's position that it is defendant's act of pleading not guilty that would nullify the Plea Agreement as opposed to the Sixth Circuit's decision.  It is also for this same reason that Judge Shirley was correct in his recommendation that the government's motion to reinstate count one must be granted.  *See also Hawk v. Berkemer*, 610 F.2d 445, 448 (6th Cir. 1979) (The state has the power to reinstate the original charges after a defendant successfully appealed his conviction pursuant to a guilty plea).

Therefore, based on the foregoing authorities, the court concludes that the Plea Agreement was not "effectively nullified by the Sixth Circuit" and rejects that part of the R&R which holds otherwise. Instead, because the defendant prevailed on appeal and because the defendant has entered not guilty pleas to the original indictment and to the superseding indictment, the Plea Agreement has now become nullified – based on the defendant's acts – and the government is liberated from its earlier commitment to dismiss count one as well as its earlier commitment not to prosecute the defendant on any other related offenses.

The above analysis has primarily addressed the government's objection. The first question raised by defendant's objections is whether the government has breached the Plea Agreement, and, if so, what are the ramifications of that breach. More specifically, the defendant contends that the government breached the Plea Agreement when it failed to apprise the court of defendant's efforts to cooperate at the time of his sentencing. Defendant is simply mistaken on this issue. As the record clearly reflects, the government complied fully with that facet of the Plea Agreement by stating in its sentencing memorandum that defendant "made efforts to cooperate" with the government [*see* Doc. 51, p.4]. Consequently, the government did "not object to defendant receiving a two point reduction for acceptance of responsibility." [*Id.*].

Additionally, even if the government had breached the Plea Agreement by failing to bring defendant's cooperation to the court's attention during sentencing, the "proper remedy may be either specific performance or permitting the defendant to withdraw his plea." *Santobello v. New York*, 404 U.S. 257, 262-63 (1971). The remedy is not, as defendant suggests, to nullify the Plea Agreement, thereby relieving the parties of their obligations under that contract. Thus, defendant's argument on this issue has no merit from either a factual or legal standpoint.

Defendant next objects to the fact that Judge Shirley did not consider his various contract defenses to the Plea Agreement. Because Judge Shirley held that the Plea Agreement had been effectively nullified by the Sixth Circuit, it was not necessary for him to address those concerns. However, because this court has determined that the defendant is in breach of the Plea Agreement, the court will turn to those various defenses, none of which has any merit.

First, defendant seeks to invoke impossibility of performance as a defense to his breach of the Plea Agreement. Impossibility may discharge a contract when an unanticipated or unforeseeable event renders performance impossible or impracticable. *Karl Wendt Farm Equip. Co. v. Int'l Harvester*, 931 F.2d 1112, 1116-17 (6th Cir. 1991). A defense of impossibility is not allowed, however, where the

supervening event might have been foreseen or anticipated. *United States v. Ellis*, 470 F.3d 275, 282 (6th Cir. 2006).

Here, performance under the Plea Agreement was neither impossible nor impracticable when the Sixth Circuit remanded this case for the defendant to plead anew. After remand, the defendant could have complied with the Plea Agreement by once again pleading guilty; instead, defendant has now chosen, completely within his legal rights, to plead not guilty to the original indictment and to the superseding indictment. Furthermore, the defendant can hardly maintain that the supervening event, *i.e.*, the Sixth Circuit's remand, was not foreseen or anticipated when that remand was precisely the relief he sought when he filed his *pro se* motion with the Sixth Circuit. Defendant's reliance on impossibility of performance as a defense to his breach of the Plea Agreement has no semblance of merit.

Defendant next contends that there was no meeting of the minds on all of the terms of the Plea Agreement. More specifically, defendant maintains that the "four corners of the document" reveal that the Plea Agreement fails for lack of facts relating to the essential element of intent to resell [*see* Doc. 89, p.6].

Nevertheless, as correctly pointed out by the government, the Plea Agreement merely sets forth the terms of defendant's guilty plea – it does not set

forth a factual basis for the plea. In fact, the Agreed Rule 11 Factual Basis [Doc. 47] was a separate filing from the Plea Agreement [Doc. 46]. For reasons previously discussed, the Plea Agreement document is still valid. There is also no proof to suggest that the defendant did not enter into that Plea Agreement knowingly, intentionally, and voluntarily and with the advice of competent counsel. Furthermore, as previously noted, the Sixth Circuit held only that the Rule 11 plea colloquy and the Agreed Rule 11 Factual Basis were insufficient, not the Plea Agreement document. Consequently, defendant cannot prevail on this theory.

Finally, defendant contends that the principal purpose of the Plea Agreement has been frustrated and he therefore validly breached the contract. Under this theory

> [w]here, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.

*Ellis*, 470 F.3d at 284 (quoting *Restatement (Second) of Contracts*, § 265).

It is somewhat unclear from defendant's brief [*see* Doc. 89, pp.6-7] as to precisely what principal purpose of the agreement, from defendant's perspective,

has been frustrated. In the court's view, the principal purpose of the Plea Agreement from defendant's perspective was the dismissal of count one, which the government honored at sentencing. There was also the possibility that the defendant might receive a motion for downward departure. Additionally, the defendant was aware that he could be charged with criminal contempt because he fled from the Midway Sanction Center on or about July 14, 2004, thereby violating the conditions of his pretrial release. This factor too had to be calculated in entering into this Plea Agreement which, at that time, avoided the filing of any such charges by the government. In short, defendant's defense of frustration of purpose falls woefully short of providing a mechanism to avoid the repercussions of his intentional breach of the Plea Agreement.

Accordingly, defendant's objections to the R&R will be overruled in their entirety.

IV.

***Defendant's Motion to Suppress Statements [Doc. 99]***

In this motion, the defendant seeks to suppress any statements made to law enforcement personnel on December 16, 2004, in the presence of his counsel, pursuant to his cooperation Plea Agreement. The defendant contends that

any such statement was involuntary as it was the product of "government coercion and/or intimidation." [*See* Doc. 99, p.2].  The defendant has cited no case law, however, to support his novel theory that statements made to law enforcement, in the presence of his own counsel, pursuant to a cooperation Plea Agreement could be somehow deemed coerced.

The test for voluntariness is whether the "confession was the product of free and rational choice."  *United States v. Marks*, 209 F.3d 577, 583 (citation omitted).  Here, it is undisputed that defendant's counsel was present during the interview.  In all likelihood, defense counsel requested the opportunity to meet with law enforcement personnel to provide information about criminal activity in an effort for the defendant to help himself and the government.  In fact, had the government refused to meet with the defendant and his counsel pursuant to this cooperation Plea Agreement, then most assuredly the defendant would have complained about that lack of interest by the government at his previous sentencing hearing.

Moreover, pursuant to the Plea Agreement, the defendant was cognizant of the fact that any statements made to law enforcement during the interview would not be used against him in any future proceeding except, among other things, if the defendant breached his Plea Agreement [*see* Doc. 46, ¶¶ 12, 17]. This court has now determined that the defendant has breached this Plea

Agreement.  Consequently, the defendant cannot be surprised by the fact that it is now permissible for the government to use these statements against him at trial because of his breach.  *See Jones*, 469 F.3d at 567 ("the agreement itself allowed the government to use the statements [given to FBI agents pursuant to his cooperation plea agreement] against Jones if he violated the terms of the agreement.").  Defendant's argument therefore fails from both a factual and legal standpoint.  Accordingly, this motion will be denied.

V.

**Motion to Dismiss on Double Jeopardy Grounds [Doc. 101]**[14]

In this motion, defendant seeks to dismiss the superseding indictment on Double Jeopardy grounds.  This argument too must be soundly rejected.

The law is clear "that the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to

---

[14]The record reflects that the defendant inadvertently filed a second identical motion that same day [*see* Doc. 102], although the record also indicates (incorrectly) that it is a memorandum in support of the original motion [*see id.*].  That second motion will thus be denied as moot.

conviction." *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988). Moreover, the Sixth

Circuit's opinion in *United States v. Jones*, 469 F.3d 563, a case which continues to

haunt this defendant, holds that the district court properly determined that the

government was not bound by the plea agreement after Jones withdrew his guilty

plea and could, in fact, file a superseding indictment. In particular, the court

observed as follows in discussing a similar case, *United States v. Bradley*, No. 92-

5270, 1993 WL 3463 (6th Cir. Jan. 8, 1993), in which the Double Jeopardy argument

was raised:

> On appeal, the Sixth Circuit rejected Bradley's claim that
> the second indictment constituted Double Jeopardy. It held
> that:
>
>> As a result of our decision to
>> suppress the evidence seized from
>> the July 27th search, the original
>> plea agreement was nullified.[15] ...
>> Therefore when we suppress the
>> evidence from the July 27th search
>> of Bradley's home, both Bradley and
>> the government were placed back in
>> the position they were in prior to
>> entering into the plea agreement.
>
> *Id.* at *4 (emphasis omitted). Another case in this circuit
> similarly noted that the government may pursue charges

---

[15]The court recognizes that this language provides some authority for Judge Shirley's
conclusion in his R&R that the Sixth Circuit's opinion in this case "effectively nullified" the
Plea Agreement [*see* Doc. 98, p.3]. *Bradley*, however, is an unreported case whereas both
the *Jones* and *Lowery* cases, relied upon by this court to reach a different conclusion, are
reported decisions. Both *Jones* and *Lowery* clearly identify the defendant's act of
withdrawing his guilty plea as the triggering event for the nullification of a plea agreement.

dismissed as part of a plea agreement after an appellate court decision in the defendant's favor prompts the defendant to withdraw his guilty plea. *See United States v. Lowery*, 60 F.3d 1199, 1205 (6th Cir. 1995).

*Id.* at 566. Accordingly, the *Jones* court similarly held that the government could indict Jones "based on any legally obtained evidence" and that in effect the defendant's Double Jeopardy concerns had no merit. *Id.* Defendant's motion on this issue will thus be denied as defendant stands before this court neither tried nor convicted so that the Double Jeopardy clause is not implicated.


## VI.

### *Defendant's Motion to Adopt Prior Suppression Motion and Memorandum [Doc. 103]*

In this motion, defendant seeks to adopt his earlier motion to suppress [Doc. 17] and the accompanying memorandum [Doc. 18] filed by his previous counsel. As already noted, the district court affirmed in part and denied in part that motion, thereby allowing the seized items (a firearm and drugs) to be introduced as evidence at trial but suppressing any statements which the defendant made after he was placed in custody for violation of his *Miranda* rights [*see* Doc. 42, pp.14-15]. Obviously, the defendant now wishes to relitigate this issue since it was ultimately decided in large measure against him. This argument is unavailing for several reasons.

First, the "law-of-the-case doctrine bars challenges to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not." *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997), *cert. denied*, 523 U.S. 1112 (1998) (citation omitted).  Furthermore, "[a] party who could have sought review of an issue or a ruling during a prior appeal is deemed to have waived the right to challenge that decision thereafter, for it would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." *Id.* (internal citations, quotations, and brackets omitted).

Here, it is undisputed that the Plea Agreement did not allow the defendant to challenge either his conviction or the resolution of his suppression motion; rather, he was allowed only to challenge his sentence.  Nevertheless, the defendant elected to breach his Plea Agreement and file a *pro se* appeal challenging his conviction.  Under those circumstances, and the defendant's breach of the Plea Agreement notwithstanding, the defendant should have also raised the issue of the denial of his motion to suppress in his appeal.  For whatever reason, he did not do so.  Consequently, the law-of-the-case doctrine prohibits the resurrection of this issue.

Second, the mandate rule also prohibits the relitigation of this issue. "The mandate rule has two components – the limited remand rule, which arises from action by an appellate court, and the waiver rule, which arises from action (or inaction) by one of the parties." *United States v. O'Dell*, 320 F.3d 674, 679 (6th Cir. 2003). The *O'Dell* court, quoting the Second Circuit, further explained that the mandate rule "compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or *impliedly* decided by the appellate court. Likewise, where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so." *Id.* (citation and internal quotations omitted) (quoting *United States v. Ben Zvi*, 242 F.3d 89, 95 (2nd Cir. 2001).

Once again, because the defendant failed to raise any argument regarding the resolution of his suppression motion on appeal, he has waived his right to raise this same issue before this court on remand. Moreover, to the extent that the defendant contends that he was precluded from raising this suppression issue because it was beyond the scope of his Plea Agreement contract, the court can only emphasize the fact that the defendant did not allow that Plea Agreement to stand in the way of filing his *pro se* motion attacking his underlying conviction based on

violations of Fed. R. Crim. P. 11. Having entered into the fray, the defendant should have done so on all potential issues.

Additionally, the court agrees with the government that because the defendant agreed not to appeal the denial of his motion to suppress in his Plea Agreement, the government is entitled to have that provision of the contract enforced according to its plain terms. *Santobello*, 404 U.S. at 262. The court also is of the opinion that the mandate rule prohibits this court from reopening this issue because there is no language in that remand permitting this court to do so. *See id.*

Finally, because this case will in all likelihood be tried before a jury, the court, in preparing for that trial, has reviewed the memorandum and order at issue [Doc. 42] and finds itself in total agreement with Judge Jarvis' analysis and conclusion. Thus, the resurrection of this particular issue would result in the same ruling, even if it were not otherwise barred by the law-of-the-case doctrine, the limited remand rule, and the waiver rule. This motion will therefore be overruled as well.

### Defendant's Motion to Dismiss
### Counts One, Two and Six of the Superseding Indictment
### for Prosecutorial Vindictiveness [Doc. 104]

In this motion, defendant seeks to dismiss counts one, two and six of the superseding indictment based on prosecutorial vindictiveness. More specifically, defendant contends that the government added these three new charges to the original indictment based solely on the fact that the defendant prevailed on his *pro se* appeal at the Sixth Circuit. In the court's view, the record does not support defendant's position.

"A prosecutor vindictively prosecutes when he acts to deter the person prosecuted from exercising a protected right." *United States v. Branham*, 97 F.3d 835, 849 (6th Cir. 1996) (citations omitted). "To prove vindictive prosecution, the defendant must demonstrate that the prosecutor has some 'stake' in deterring the defendant's exercise of constitutional rights, and that the prosecutor's conduct was somehow unreasonable." *Id.* at 859-60 (citations omitted).[16] Although the Sixth Circuit has determined there is the potential for vindictiveness in the addition of

---

[16]The Sixth Circuit has also reconfigured the same basic requirements in a four-part test whereby the defendant must show: (1) the exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; and (4) the intent to punish the defendant for exercise of the protected right. *United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001). Regardless of the test applied, the court's analysis is the same.

charges after an exercised right, "if the charges are brought simply as the result of failure of the plea bargaining process, they are not vindictive." *United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001) (citations omitted).

In this case, the primary factor which cuts in favor of the government's position is that, after the government filed the second superseding indictment, the government offered the defendant the opportunity to replead to the original charges in the indictment and further agreed to recommend the same sentence [*see* Doc. 113, p.5]. Nevertheless, the defendant rejected that offer [*id.*], even though that previous sentencing reflected the government's position that it "did not object to defendant receiving a two point reduction for acceptance of responsibility" [*see* Doc. 51, p.4], and even though the defendant absconded from Midway Sanction Center during the pendency of this litigation in violation of the court's order. Hence, the plea bargaining process just failed. In the court's view, such an offer by the prosecutor, under these circumstances, falls woefully short of "unreasonable conduct." Had the government's plea offer, for example, been one for a longer period of incarceration than the defendant received at his initial sentencing, then the court's position would probably be otherwise or would at least require "an evidentiary hearing where the government's explanations [could] be formally presented and tested." *United States v. Andrews*, 633 F.2d 449, 457 (6th Cir. 1980) (en banc). However, that is not the situation before the court.

Additionally, as discussed by the Supreme Court in *United States v. Goodwin*, 457 U.S. 368 (1982), it is not unusual or unreasonable for a prosecutor to "uncover additional information" that suggests a basis for further prosecution or realize that information possessed by the government has a "broader significance" justifying additional charges when the prosecutor is preparing the case for trial and when such case has not proceeded to trial earlier. *Id.* at 381. As further observed by the *Goodwin* Court, "[a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." *Id.* at 382. Here, the government, because of the Sixth Circuit's opinion, was almost compelled to do something more. Again, the Sixth Circuit held that in light of the "small quantity of drugs," the factual stipulation "*without more,*" is ambiguous and does not sufficiently establish that McCreary-Redd intended to distribute the substance." *McCreary-Redd*, 475 F.3d at 724 (emphasis added). Based on the limited remand, the government was specifically precluded by the Sixth Circuit from supplementing this record when the defendant came "for pleading anew." *Id.* at 727. Unless the defendant pled guilty to the original charges, which he did not, the government's only options were to dismiss the drug charges in this indictment or to do something more, *i.e.*, file a superseding indictment. Thus, the court concludes that there is nothing unreasonable about the filing of the superseding indictment.

Finally, the court is hardpressed to comprehend what "gain" the prosecution seeks in supplementing the original charges. *See Suarez*, 263 F.3d at 480. It is well settled that "avoidance of trial as a prosecutorial stake is implicit in the plea bargaining process and therefore exempt ... from being held vindictive." *Id.* Here, by the addition of these charges, the government was virtually guaranteed that there would be no plea agreement and therefore assured itself, contrary to its normal goal of avoiding trial, that this case would, in fact, be tried before a jury. The addition of these charges therefore results in a "loss" to the government as opposed to some sort of "gain." The defendant's motion to dismiss for prosecutorial vindictiveness will thus be denied.

## VIII.

### *Defendant's Motion to Exclude a Statement [Doc. 105]*

In this motion, defendant again seeks to exclude a statement made to law enforcement agents pursuant to his cooperation Plea Agreement. Defendant specifically contends that any such statement is inadmissible as it violates Fed. R. Crim. P. 11(e) and (f) and Fed. R. Evid. 410. Defendant's motion will be denied because it is totally foreclosed by the Sixth Circuit's decision in *United States v. Jones*, 469 F.3d 563.

Specifically, as the *Jones* court stated, "[w]ithdrawing his guilty plea, while completely within Jones' rights, did violate the express terms of the plea agreement, freeing the government of its contractual obligation not to use the statement against him." *Id.* at 567. Moreover, the *Jones* case clearly holds that the admission of any such statement would not violate Fed. R. Evid. 410. *See id.* The Plea Agreement in this case specifically permits the use of "all admissions and other information" under certain circumstances, one of which being if the defendant withdraws from his plea agreement [*see* Doc. 46, ¶ 17]. Consequently, the government is free to introduce any such statement by the defendant against him at trial.

Defendant's statements to law enforcement are therefore admissible and his corresponding motion will be denied.

IX.

**Conclusion**

For the reasons foregoing, it is hereby ORDERED as follows:

1.      Defendant's objection [Doc. 107] to the R&R [Doc. 98] filed by Judge Shirley on October 10, 2007, is hereby OVERRULED, and the government's objection [Doc. 108] to that R&R is

SUSTAINED whereby the R&R is ACCEPTED IN PART and REJECTED IN PART to the extent that defendant's motion to declare the plea agreement void [Doc. 83] is DENIED and the government's motion to reinstate count one of the indictment [Doc. 95] is GRANTED;

2.      The following defense motions are hereby DENIED:

(i)  motion to suppress statements [Doc. 99];

(ii)  motion to dismiss the indictment on Double Jeopardy grounds [Doc. 101];

(iii) motion to adopt a prior suppression motion [Doc. 103];

(iv) motion to dismiss for prosecutorial vin- dictiveness [Doc. 104];  and

(v)  motion to exclude a statement [Doc. 105]; and

3.      Defendant's motion to dismiss the indictment on Double Jeopardy grounds [Doc. 102] is hereby DENIED AS MOOT.


It is so ORDERED.


          _____*s/ Thomas W. Phillips*_____
          UNITED STATES DISTRICT JUDGE